Ouida L. DARWIN, Appellant

v.

Gerald K. FUGIT, Appellee.

No. 2–94–251–CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 14, 1995.

Rehearing Overruled Jan. 18, 1996.

Ralph C. Perry–Miller, Perry–Miller & Beasley, L.L.P., Dallas, for Appellant.

John P. Camp and John F. Murphy, Camp & Warren, L.L.P., Fort Worth, for Appellee.

Before LIVINGSTON, DAUPHINOT and BRIGHAM, JJ.

## OPINION

BRIGHAM, Justice.

Appellant Ouida L. Darwin ("Darwin"), plaintiff below, appeals the trial court's decision in which her summary judgment was denied and appellee Gerald K. Fugit's ("Fugit") was granted. The dispute arose out of a partnership to create and operate a cable television business. We affirm in part and reverse and remand in part.

### PROCEDURAL SUMMARY

In 1978, Darwin and Fugit entered into a partnership to obtain cable television franchises in Texas cities. View Cable T.V., Inc. ("View Cable") was incorporated in August 1978, with Fugit serving as president of the corporation and Darwin serving as secretary. The two served as the only directors of View Cable and, at the first meeting of the board of directors, the two adopted a resolution

issuing half of the stock to Darwin and half of the stock to Fugit. View Cable then applied for and operated cable television franchises in various cities.

In 1983, Fugit sold his half of the stock to Richard Shelton and others ("Shelton"), who caused View Cable to file a declaratory judgment action against Darwin on the basis that she had not paid for her stock (the "Shelton–Darwin litigation"). Darwin joined Fugit as a third-party defendant, and the trial court severed the third-party action on September 22, 1988.

The Shelton–Darwin suit was tried, and the jury found that Darwin's stock was validly issued. However, this court reversed the trial court's judgment and canceled Darwin's stock. See *View Cable TV, Inc. v. Darwin,* No. 02–90–00316–CV (Tex.App.—Fort Worth, December 4, 1991, no writ) (not designated for publication).

Fugit filed a motion for summary judgment in the severed third-party action on April 7, 1994, claiming that he was entitled to judgment as a matter of law as to Darwin's complaint that he failed to ensure she owned half of View Cable. In response, Darwin filed a cross-motion for summary judgment on May 5, 1994, alleging negligence, breach of fiduciary duties, breach of contract, fraud/intentional misrepresentation, constructive fraud, negligent misrepresentation, breach of the covenant of good faith and fair dealing, promissory estoppel, civil conspiracy, and/or quantum meruit. The trial court granted summary judgment for Fugit and denied Darwin's cross-motion. Darwin filed the instant appeal.

**FACT SUMMARY**

Darwin and Fugit formed a partnership, which was to be converted into a corporation, in 1978. Fugit was to furnish or obtain all financing for the company, handle all of the partnership's legal work, maintain all corporate records, and prepare and file required papers to convert the partnership to a corporation and the partnership interests to those of the shareholders. Darwin, with some as-

1. Chet Darwin's ownership interest in the Darwin–Fugit partnership was consolidated and

sistance from her husband[1], was to prepare applications for franchises, file the applications, handle all local contracts, and manage the business and office.

Articles of Incorporation and Bylaws for View Cable were drafted and provided for the issuance of 100,000 shares of stock without par value. The Articles of Incorporation also stated that the corporation would not commence business until it received for its shares $1,000.00 consisting of money, labor done or property received. The Articles of Incorporation were filed with the Secretary of State on August 25, 1978.

The minutes of the first directors' meeting shows that the directors agreed to adopt the bylaws. Among the resolutions passed at the meeting were the following:

11. Issuance of shares

RESOLVED, that this corporation issue 100,000 of its shares in exchange for cash at a price of $1 per share to the following named persons in the amounts set forth opposite their respective names:

| Name of Shareholder | Number of Shares |
| --- | --- |
| GERALD K. FUGIT | 50,000 |
| OUIDA LEVAUGHN DARWIN | 50,000 |

RESOLVED FURTHER, that on Oct. 2, 1978, on receipt by the corporation of the consideration to be paid for its shares, the officers of the corporation are directed to issue to each of the persons named in these resolutions the number of shares of the corporation set forth in these resolutions opposite their respective names;

12. Issuance of shares as
Internal Revenue Code Section 1244 Stock

RESOLVED, that this corporation being a small business corporation and having no portion of a prior offering outstanding, the following Plan to Issue Section 1244 Stock is adopted:

owned by his wife.

## PLAN TO ISSUE SECTION 1244 STOCK

(1) The Plan is herein set forth on its adoption by the Board of Directors of the corporation shall become effective *October 2, 1978.*

(2) The corporation is authorized to offer and issue 100,000 shares of common stock from the date hereto to *October 2, 1978* [issue date, not more than two years], or to the date when the corporation shall make a subsequent offering of any stock, whichever shall sooner occur.

(4) During such period as set forth in Paragraph (3), the corporation shall offer and issue only such common stock.

(5) The maximum amount to be received by the corporation in consideration of the stock to be issued pursuant to this Plan shall be *$1,000.00* [total consideration, must be less than $500,000].

(6) Such common stock shall be issued only for money or other property (other than stock or securities).

(7) Such other action shall be taken by the corporation as shall qualify the stock offered and issued under this Plan as "Section 1244 Stock" as such term is defined in the Internal Revenue Code of 1954 and the Regulations issued thereunder.

Darwin argues that the resolutions are inconsistent and meaningless if construed together, because resolution 11 provides for the issuance of 100,000 shares of stock at one dollar per share, and resolution 12 calls for the issuance of the same amount of stock for a maximum consideration amount of $1,000.00. She maintains resolution 11 is also inconsistent with Article V of the Articles of Incorporation, which mandated that the corporation would not begin business until it received $1,000 in cash, labor or property. Additionally, Darwin disputes that 100,000 shares were to be issued and maintains that the correct number of shares to be issued was 1,000.

Darwin argues that when Fugit agreed to serve as legal counsel for the partnership and corporation, he represented to the Darwins that he was protecting their interests by acting as their legal counsel on matters related to View Cable. She asserts that he failed to recommend that they seek advice of other counsel and never objected to an express statement by Darwin's husband that they considered Fugit to be their legal counsel. Darwin maintains that Fugit represented to her that they had each been issued half the shares of stock in View Cable. She asserts in her brief that she and her husband performed more than $50,000.00 worth of services in applying for a particular cable franchise and had contributed more than $1,000.00 in cash to the corporation by covering application expenses with their own money. She also argues that, at the time Fugit said the stock had been issued, he had not paid or contributed $50,000.00 or its equivalent to the corporation. She further claims that she and her husband personally guaranteed several corporate loans and pledged personal assets to secure the loans without compensation.

Fugit maintains that when this court reversed the jury's verdict in the Shelton–Darwin lawsuit, we did so on the basis that resolution 11, rather than resolution 12, governed the transaction. That interpretation, he says, required Darwin to have paid $50,000.00 for her shares of stock under resolution 11, rather than $500.00 under resolution 12.

Darwin's attorney in the original suit did not argue to this court that resolutions 11 and 12 are mutually exclusive and that resolution 11 had to necessarily be invalid because *neither* Darwin nor Fugit had paid $50,000.00 for their stock. Fugit contends that Darwin's only injuries stemmed from her appellate attorney's failure to pursue that argument before this court, but Darwin maintains that Fugit's wrongful conduct leading to Shelton's claim caused her damages prior to appeal.

## POINT OF ERROR ONE

Darwin claims that the trial court erred in granting summary judgment for Fugit. She argues her point by examining each basis for summary judgment asserted by Fugit, and that structure will be reproduced here.

## The Negligence Claim

Darwin maintains that she had placed special confidence in Fugit to protect her interests regarding issuance of the stock and that Fugit was aware of that confidence. She claims that a partnership relationship existed between the two when Fugit incorporated the business and issued the shares. She asserts that he breached his duty to act as a reasonably prudent attorney by failing to properly issue stock to Darwin, failing to draft documents clearly transferring ownership of one-half of the interest of View Cable to her, failing to inform her how to cure the ambiguities in the documents, failing to inform her that he did not consider himself to be representing her interests and ineptly drafting the minutes and articles of incorporation.

Darwin contends that these breaches were the proximate cause of her substantial damages because they caused the Shelton–Darwin lawsuit, which involved an expense of time and money for her when Shelton disputed Darwin's ownership interest. According to Darwin, Shelton had the "assistance" of Fugit's statements that Darwin's stock may not have been properly issued before Shelton decided to challenge Darwin's ownership in the company.

Fugit begins his brief by detailing the origins of the partnership and View Cable corporation and then extensively arguing that resolution 12 controlled the transaction. He spends more than twenty pages of his brief explaining that Darwin's shares were properly issued and that this court incorrectly interpreted resolution 12 as requiring $50,000.00 in consideration, thus depriving Darwin of her shares.

He responds to Darwin's negligence claim by asserting that he negated two essential elements: causation and damages. He asserts that there is no causal link between his actions and the fact that Darwin does not own her stock today. He claims that the corporate documents he prepared are not the "but for" cause of the cancellation of Darwin's stock but that instead, the failure of Darwin's attorney to raise the same arguments summarized here led to the cancellation. He says that he did not cause the Shelton–Darwin litigation to be filed, reasoning that "[n]o job of legal drafting, however perfect, can prevent another party from challenging a document in a court proceeding." He also avers that the cancellation of Darwin's shares was not a foreseeable consequence of the corporate minutes, and cites a letter from the trial court judge [2] which stated, "That the *View Cable* case was pled, tried and appealed on the $50,000.00 consideration theory of issuance under Resolution 11 is simply inexplicable at this juncture." He maintains that when Darwin and Fugit parted ways, she had what she bargained for: one-half ownership of View Cable.

He also maintains that he negated the damages element of Darwin's claim. Darwin seeks two elements of damages: (1) the value of the stock; and (2) her attorney's fees from the Shelton–Darwin litigation. Fugit says Darwin cannot recover the value of the 50,000 shares of stock because it was properly issued to her and her loss of it was not caused by Fugit's actions. Additionally, he claims that she cannot recover attorney's fees expended in third party litigation.

Darwin responds that, even if this court accepts Fugit's theory that this court misapplied the law in the Shelton–Darwin appeal and that her attorney failed to properly represent her in that litigation at trial and on appeal, she has still suffered damages caused by Fugit's negligence. She maintains that Fugit's negligence, which created the ambiguity and uncertainty regarding the proper issuance of stock, led to Shelton filing suit. She says that Fugit's actions set in motion a natural and unbroken chain of events leading to her injury.

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that

---

2. In a letter to counsel, the trial court stated that "it is clear ... that the shares were issued under Resolution 12 of the minutes in exchange for the total consideration of $1000.00 ($500.00 each from Darwin and Fugit). That the *View Cable* case was pled, tried and appealed on the $50,000.00 consideration theory of issuance under Resolution 11 is simply inexplicable at this juncture."

no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law. *See* Tex.R.Civ.P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue to a material fact are resolved against movant. *Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.*, 391 S.W.2d at 47.

■ In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Ins. Co.*, 480 S.W.2d 176, 178 (Tex.1972). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.*, 391 S.W.2d at 47.

Fugit states in his motion for summary judgment that the cancellation of Darwin's stock is the centerpiece of her lawsuit and that if the stock was properly issued, her cause of action falls apart. We agree, but the reverse is also true: if Darwin's stock was *not* properly issued, Fugit's summary judgment falls apart.

Fugit does not dispute that he had a duty to Darwin to properly issue the shares of stock in View Cable; he implicitly concedes as much in arguing that he *did* properly issue the shares. We, however, disagree with his bold assertion that "[a]s a matter of law, there is no causal link between Fugit's actions and the fact that Darwin does not own her stock today."

■ If an act sets in motion a natural and unbroken chain of events leading directly and proximately to a reasonably foreseeable result or injury, it is a proximate cause of that injury. *Hart v. Van Zandt*, 399 S.W.2d 791, 793 (Tex.1965). Proximate cause is com-prised of two elements: (1) cause in fact; and (2) foreseeability. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985). Foreseeability, on the other hand, denotes that a person of ordinary intelligence should have anticipated the danger his negligent act created to others. *Nixon*, 690 S.W.2d at 549–550. The act of a third person which intervenes but only contributes a condition necessary to the injurious effect of the original negligence, does not excuse the first tortfeasor if the act was foreseeable. *Id.* A cause will only be considered "new and independent" if it is an act or omission of a separate and independent nature which destroys the causal connection between the negligent act or omission of the first tortfeasor and the injury complained of, which thereby becomes the immediate cause of such injury. *Galvan v. Fedder*, 678 S.W.2d 596, 598 (Tex.App.—Houston [14th Dist.] 1984, no writ). We find that the acts and omissions of Fugit were, to use his words, "the first causal domino in a long chain reaction."

■ The Articles of Incorporation for View Cable, which were drafted by Fugit or his legal secretary, contained two contradictory provisions: resolution 11, which required $50,000.00 consideration for the shares; and resolution 12, which required $500.00 in cash, property, or labor for the shares. Fugit does not dispute that the provisions were contradictory; instead, he argues vociferously that resolution 12 should have been held effective because: (1) resolution 11 violated article 2.16 of the Texas Business Corporations Act; and (2) the parties intended for resolution 12 to apply. Fugit would have us believe that this interpretation is self-evident and that it was a combination of this court's "devastating mistake" and the inadequacy of Darwin's attorney which caused her damages. He further asserts that "no job of legal drafting, however perfect, can prevent another party from challenging a document in a court proceeding."

The resolutions in the Articles of Incorporation did not include a subtle contradiction; two inherently irreconcilable provisions were

listed consecutively. This is not an instance where one party manufactured a cause of action for the purpose of delay or harassment; an outsider reading the resolutions has no way of easily determining whether 11 or 12 was applicable. We agree with the sentiments expressed by the trial court and also find it unclear as to why the Shelton–Darwin case was tried on the $50,000.00 consideration theory. Additionally, we cannot determine, from reading this court's opinion in *View Cable*, how the court determined that Darwin should have paid $50,000 for her shares of stock. Nevertheless, Fugit's inadequate job of drafting left Darwin exposed and set in motion the events leading to the instant situation. As a result, we find Fugit failed to negate causation or damages. Summary judgment could not have been properly granted as to the negligence claim.

### The Breach of Contract Claim

■ Darwin claimed Fugit was liable for breach of agreement because of his failure to properly and substantially perform by neglecting to properly issue shares due to his failure to properly draft the corporate documents. Darwin asserts that Fugit was entitled to summary judgment as to this claim only if he could demonstrate that an essential element of the cause of action for breach of contract does not exist. The elements of a claim for breach of contact are: the existence of a contract; breach of that contract; causation; and damages. *Wilfin, Inc. v. Williams*, 615 S.W.2d 242 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

Darwin contends that the existence of an agreement for Fugit to provide services to incorporate the business and issue the ownership interest was not disputed by Fugit and that the only contested issues were causation and damages. She asserts that Fugit's breach of the contract was evidenced by his failure to clearly and unambiguously draft the incorporation documents so as to clearly and unambiguously issue one-half ownership in the corporation to Darwin.

Fugit merely responds that as a matter of law, Darwin owned 50 percent of the View Cable stock and that Darwin suffered no damages caused by any alleged breach on the part of Fugit. Again, we reject this reasoning. According to Fugit, Darwin's loss of ownership occurred as the sole result of her attorney's failings and that Fugit competently completed the tasks he agreed to perform. Fugit has not negated causation or damages; summary judgment as to the breach of contract claim was improper.

### The Fraud/Intentional Misrepresentation Claim

Darwin claims that Fugit committed fraud and intentional misrepresentation by representing that he would take the action necessary to vest her with fifty percent ownership in the property and in representing to her that she owned fifty percent of the property.

■ A cause of action for fraud or intentional misrepresentation can exist where the following elements are demonstrated:

1) a material misrepresentation was made;

2) the misrepresentation was made recklessly or with knowledge of its falsity;

3) the misrepresentation was made in anticipation of reliance upon it; and

4) actual reliance occurred which resulted in damages to the plaintiff.

*Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983).

■ Darwin contends that each of the elements was supported by summary judgment evidence and Fugit disputed only causation and damages, thus waiving the other issues.

In his motion for summary judgment and in his brief on appeal, Fugit contends that the summary judgment evidence proves that Darwin suffered no damages proximately caused by Fugit. We find that a fact question exists as to causation and damages and that summary judgment was improper.

### The Remaining Causes of Action

Darwin also alleged negligent misrepresentation, civil conspiracy, promissory estoppel, breach of fiduciary duties, constructive fraud, breach of the duty of good faith and fair dealing, and quantum meruit. As to each of these claims, Fugit disputed only

causation and damages, and he relied on the same explanation of how this court's previous decision and the conduct of Darwin's attorney combined to divest her of her shares of stock. We reject Fugit's blanket assertion that the carelessness of his drafting and representations to Darwin in no way caused the instant situation. A fact question exists as to Fugit's role in the chain of events precluding summary judgment.

After examining each of Darwin's allegations, Fugit's response, and the competent summary judgment proof, we find summary judgment was improper. Darwin was engaged in a professional relationship with an attorney who had agreed to incorporate their business, draft articles of incorporation, issue the shares of stock and conduct the legal transactions on behalf of the company. Fugit improperly drafted articles of incorporation which opened the door for a court challenge to Darwin's purported ownership of the stock and which ultimately deprived her of her shares. Although the conduct of Darwin's attorney may have been a contributing factor, we disagree with Fugit's contention that he has as a matter of law and fact negated the contested issues of causation and damages as to Darwin's claims. Darwin's first point of error is sustained.

### POINT OF ERROR TWO

Darwin next contends that the trial court erred in denying her cross-motion for summary judgment on her claims for negligence, breach of fiduciary duties, breach of oral/implied contract, fraud/intentional misrepresentation, constructive fraud, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, promissory estoppel, civil conspiracy, and quantum meruit. She contends that the elements of these causes of action have been established as a matter of law, and that Fugit failed to dispute the existence of any of Darwin's causes of action with the exceptions of causation and damages. In advancing her second point of error, Darwin incorporates the arguments espoused in her first point of error.

As we have noted, Fugit makes a comprehensive argument explaining how he believes Darwin's stock was properly issued and how it was solely the conduct of Darwin's attorney, rather than Fugit's own conduct, which deprived Darwin of her ownership. Although we have rejected Fugit's assertion that he has conclusively negated causation as a matter of law, we recognize that there is a fact question. It is for a jury to determine what role, if any, Fugit played in Darwin's loss of her shares. Accordingly, it was proper for the trial court to deny Darwin's summary judgment. Her second point of error is overruled.

Thus, the trial court's judgment denying Darwin's summary judgment is affirmed. The trial court's judgment granting Fugit's summary judgment is reversed and remanded for proceedings consistent with this opinion.