In The

Court of Appeals

For The

First District of Texas






NO. 01-02-00150-CV






RAFAEL URISTA, Appellant


v.


BED, BATH, & BEYOND, INC., Appellee






On Appeal from the 234th District Court 

Harris County, Texas

Trial Court Cause No. 2000-06999 





OPINION ON REHEARING AFTER REMAND


 Appellant, Rafael Urista, moved for rehearing from our Opinion on Remand,
which issued August 9, 2007, asserting that we failed to consider his issue regarding
the improper submission of the "new and independent cause" instruction and that he
did, in fact, preserve error on the improper limitation of voir dire. We grant Urista's
motion for rehearing only regarding the jury instruction issue, withdraw our prior
Opinion on Remand, and substitute this opinion in its place.

 Appellant, Rafael Urista, appeals from a take-nothing jury verdict entered
against him in his personal injury suit against appellee, Bed, Bath, and Beyond, Inc.
("BBB"). In our opinion on rehearing, this Court reversed and remanded based on
the trial court's submission of an unavoidable accident instruction. Urista v. Bed,
Bath, & Beyond, Inc., 132 S.W.3d 517, 523 (Tex. App.--Houston [1st Dist.] 2004)
(Urista I), rev'd by Bed, Bath, & Beyond, Inc. v. Urista, 211 S.W.3d 753 (Tex. 2006)
(Urista II). On BBB's petition for review of our decision, the Texas Supreme Court
held that the trial court's submission of the unavoidable accident instruction was not
reversible error and remanded the case for our consideration of Urista's remaining
issues. Urista II, 211 S.W.3d at 759-60. 

 In his remaining four issues that we address on remand, Urista contends that
the trial court committed reversible error during jury selection and instructing the jury
on "new and independent cause" and that the jury's verdict was against the great
weight and preponderance of the evidence. We conclude that the trial court did not
abuse its discretion by denying Urista's requested challenges for cause and that Urista
failed to preserve for appeal his other challenges to the trial court's rulings during
voir dire examination. We also conclude that the new-and-independent-cause
instruction was harmless and that the evidence is factually sufficient to uphold the
jury's verdict. We affirm. Background

 On September 19, 1998, while shopping at a BBB store, Urista was hit in the
head and knocked unconscious by plastic trash cans that fell from a store shelf. 
Reginald Neal, a store employee, was attempting to remove items from the shelf when
the trash cans fell. Upon learning of the incident, David Traxler, a general manager
with the store, approached Urista and filled out an accident report. Urista did not
report serious injury at that time. Five weeks later, Urista claimed injury and
photographed the store in preparation for his personal-injury lawsuit against BBB. 
Urista claimed that he suffered a degenerative back condition as a result of being hit
by the trash cans. 

 At trial, the court allowed each of the attorneys the opportunity to question the
panel during group voir dire, followed by individual voir dire of certain individuals
who, during group voir dire, suggested they had an inability to follow the law. After
a jury was seated, Urista presented evidence that Neal negligently caused the trash
cans to fall. However, on cross-examination, Urista testified, among other things, that
he had injured his back twice before: in 1995 in an automobile accident and in 1996
while at work. The jury found that BBB was not negligent, and the trial court entered
a take-nothing judgment in favor of BBB. 

Challenge for Cause Granted In his first issue, Urista asserts that the trial court erroneously granted BBB's
challenge for cause against prospective juror number 26. BBB contends that Urista
waived this issue because he did not object to the trial court's exclusion of juror
number 26. 

 In general, voir dire objections must be timely and plainly presented. Hyundai
Motor Co. v. Vasquez, 189 S.W.3d 743, 759 (Tex. 2006); see, e.g., Hallett v. Houston
Nw. Med. Ctr., 689 S.W.2d 888, 889-90 (Tex. 1985) (holding that appellant waived
trial court's error in failing to excuse juror for cause by not informing court before
exercise of peremptory challenges that counsel lacked sufficient peremptory
challenges to remove all objectionable jurors); see also Tex. R. App. P. 33.1(a)(1)
(timely objection to trial court required to preserve complaint for appeal). We find
no reported civil cases in which the appellant objected to the trial court's grant of his
opponent's challenge for cause, but we note that this situation has arisen in the
criminal context. See, e.g., Ortiz v. State, 93 S.W.3d 79, 88 (Tex. Crim. App. 2002);
Purtell v. State, 761 S.W.2d 360, 365 (Tex. Crim. App. 1988). As the supreme court
has relied on pronouncements of its "sister court" on issues of voir dire, so do we,
too, look to the Court of Criminal Appeals for guidance here. See Hyundai Motor
Co., 189 S.W.3d at 752-53; Cortez v. HCCI-San Antonio, Inc., 159 S.W.3d 87, 91
(Tex. 2005). In criminal cases, a party must object to a trial court's grant of a
challenge for cause before he may complain of that action on appeal. Ortiz, 93
S.W.3d at 88; Purtell, 761 S.W.2d at 365. This principle also applies to the
safeguarding of similar rights in civil cases. 

 The record shows that in granting BBB's challenge to juror number 26, the trial
court stated, "These are the ones I'm excusing for cause. If you really disagree, you
can talk to them and let me know . . . so those are the people that I am granting the
motions to excuse for cause at this time." Just before the attorneys began making
their peremptory strikes, the record shows that the trial court formally excused for
cause juror number 26. At no point in the proceedings did Urista's attorney request
that the trial court bring juror number 26 forward for individual questioning, nor did
the attorney object to the trial court's ruling granting the challenge for cause of this
juror. Because Urista did not object when the trial court granted BBB's challenge for
cause, we hold that Urista has waived his complaint on appeal. See Tex. R. App. P.
33.1(a)(1). 

 We overrule Urista's first issue.

Challenges for Cause Denied

 In his second issue, Urista asserts that the trial court erred in denying his
motion to strike two prospective jurors, juror number 5 and juror number 20, for
cause. Urista used peremptory strikes on these jurors, resulting in two objectionable
jurors serving on the jury. 

 A. Preservation of Error

 BBB contends that Urista failed to preserve error concerning the trial court's
denial of Urista's requested challenges for cause. To "preserve error when a
challenge for cause is denied, a party must use a peremptory challenge against the
veniremember involved, exhaust its remaining challenges, and notify the trial court
that a specific objectionable veniremember will remain on the jury list." Cortez, 159
S.W.3d at 90-91 (citing Hallett, 689 S.W.2d at 890). "This ensures that 'the court is
made aware that objectionable jurors will be chosen' while there is still time 'to
determine if the party was in fact forced to take objectionable jurors.'" Id. at 91. The
supreme court held in Cortez that error concerning the trial court's denial of a
challenge for cause requested by Cortez was preserved under circumstances that
showed that (1) Cortez "gave notice to the trial court before or after he delivered his
strike list" in a manner such that the notice was "roughly contemporaneous," (2)
Cortez's notice was given before the jury was seated, and (3) the trial court stated on
the record "it's preserved." Id. Here, before the jury was seated and at about the
same time that Urista turned in his strike list, Urista reasserted his objections to jurors
5 and 20, reporting to the court that he was using peremptory strikes on these jurors
and identifying the objectionable jurors who would be seated on the jury due to the
trial court's denial of the challenges for cause. We conclude that, under Cortez, error
is preserved. See id.

 B. Juror Bias or Prejudice

 Urista contends that the trial court erred by failing to grant his challenge for
cause on jurors 5 and 20 because they exhibited signs of bias or prejudice. We review
a trial court's ruling on a challenge for cause for abuse of discretion. Id. at 93. 

 Voir dire examination allows parties to expose possible improper juror biases
that form the basis for disqualification and enables parties to intelligently exercise
their peremptory strikes. Hyundai Motor Co., 189 S.W.3d at 749. "Bias, in its usual
meaning, is an inclination toward one side of an issue rather than to the other, but to
disqualify, it must appear that the state of mind of the juror leads to the natural
inference that he will not or did not act with impartiality." Id. at 751. However,
statements that reflect a juror's judgment about the facts of a case as presented, rather
than an external unfair bias or prejudice, do not amount to a disqualifying bias. Id.;
Cortez, 159 S.W.3d at 94. In Cortez, a nursing home negligence case, a juror, who
had worked as an insurance adjuster, stated during voir dire that the defendants would
be "starting out ahead," due to his personal bias against lawsuit abuse. Id. at 90. The
supreme court explained, however, that "the relevant inquiry is not where jurors start
but where they are likely to end. An initial 'leaning' is not disqualifying if it
represents skepticism rather than an unshakeable conviction." Id. at 94. 

 Challenges for cause do not turn on the formulaic use of specific words. Id. at
93. "Veniremembers may be disqualified even if they say they can be 'fair and
impartial,' so long as the rest of the record shows they cannot. By the same token,
veniremembers are not necessarily disqualified when they confess 'bias,' so long as
the rest of the record shows it is not the case." Id.

 During group voir dire, Urista's attorney discussed the specific evidence that
he intended to introduce in the case, followed by a question to the jurors regarding
how they would assess that evidence. The record shows that Urista's attorney stated,

 The evidence in this case, and I need to bring this up, is going to show
you that in 1996, Mr. Urista had a work related injury while he worked
in Austin. He hurt his low back. And it was a significant injury. Took
him about 18 months to recover. You'll also hear in the case that for the
next 14 months, Mr. Urista lived a normal life with this family. He had
healed, until he walked into Bed, Bath & Beyond that day. And I'm
going to bring you the evidence about the 1996 injury. We're going to
talk about it at length, the medical care and so forth. But is there
anybody that [sic] thinks that you would have difficulty knowing he had
a prior injury, although he recovered from it, would have difficulty
knowing he had an injury that dealt with the same part of his body? 
Raise those hands up.


 Jurors numbers 5 and 20 responded to this inquiry.


 1. Responses by Juror Number 5


 Juror number 5 said during the group voir dire, "Well, since he got a prior
incident, and here goes another incident--I don't know . . . if he went to trial for the
other one also, I would have to hear all the evidence." Juror number 5 said that since
Urista's attorney told her that Urista had a prior injury, it would make it difficult for
her "to judge it equally and fairly." During individual questions of juror 5, the juror
initially related that she would hold Urista to "a greater burden of proof than what the
law says in a civil case" and that Urista would have a "higher burden" to prove more
than what the law required. However, upon further questions by BBB's attorney and
the trial court, juror 5 said that she "would follow what the Court says the law is," she
would base her verdict on the law as given to her by the Court, she would "sit fairly,"
and "evaluate the facts of the case." 

 2. Responses by Juror Number 20

 During group voir dire, juror number 20 responded to Urista's attorney's
question by agreeing with counsel that "[p]reponderance is out the window." Upon
individual questioning, juror number 20 acknowledged that "without having heard
anything from the stand, Mr. Phillips and Bed, Bath & Beyond" are "slightly" ahead,
and that it was "not even." When Urista's attorney said, "Nothing in the world is
going to change to make it even, is it, no matter what anybody says," the juror
responded "No." During the trial court's questioning, juror number 20 said that the
reason that she was "weighted in favor of the defendant" was "solely because the
plaintiff has said that there was a back injury in the same part of the body." Juror
number 20 said that she "would be able to wait and hear the evidence in the case and
be fair to both sides." 

 3. Analysis 

 Although jurors 5 and 20 initially said they would have difficulty judging the
case equally and fairly, those statements were in response to Urista's attorney's
questions presenting the actual facts in the case, which is not a proper ground for
disqualification because a party is entitled to a fair jury, not to a favorable jury. See
Hyundai Motor Co., 189 S.W.3d at 749-50; Cortez, 159 S.W.3d at 94. As the trial
court expressed when denying Urista's challenge for cause to number 20, Urista's
claim of bias or prejudice was similar to asking a juror, "Would you be prejudiced
against my client because my client ran a red light and got in an accident?" The
jurors reported a willingness to listen to the evidence, fairly evaluate the facts in the
case, and apply the law as given by the judge. We conclude that the trial court did
not abuse its discretion by denying Urista's challenges for cause of jurors 5 and 20
because the record fails to show any disqualifying external bias or prejudice. See
Cortez, 159 S.W.3d at 91, 93-94; see also Hyundai Motor Co., 189 S.W.3d at 751. 
 We overrule Urista's second issue.

Limitation of Individual Voir Dire

 In his third issue, Urista contends that the trial court erred in denying him the
opportunity to further question prospective jurors 29, 32, and 33 regarding their
ability to award mental anguish damages. These jurors were part of the group voir
dire, but were not individually questioned by the attorneys. Urista complains that the
trial court reversed its decision to allow individual questioning of these three
prospective jurors after the court had related that it would allow individual
questioning of jurors. Although Urista's attorney was allowed to question many of
the prospective jurors individually, the trial court did not allow him to question these
three jurors individually. 

 To preserve a complaint that a trial court improperly restricted voir dire, a party
must alert the trial court as to the specific manner in which it intends to pursue the
inquiry. Hyundai Motor Co., 189 S.W.3d at 758 (finding error waived by party's
failure to "frame additional inquiries or convey to the trial court that the thrust of any
remaining questions would be different from the single one presented for a ruling"). 
The court explained that to preserve error, the trial court must be given the
"opportunity to cure any error, obviating the need for later appellate review, and
further [allow] an appellate court to examine the trial court's decision in context to
determine whether error exists, and if so, whether harm resulted." Id. "Thus, the
Court traditionally has adhered strictly to the principle that voir dire objections must
be timely and plainly presented." Id. at 759. 

 During voir dire of the group of prospective jurors, Urista's attorney questioned
the panel concerning mental anguish, by asking "Is there anybody that is
philosophically opposed to awarding someone damages for anything like mental
anguish . . . ?" and by asking whether the jurors "would have trouble following the
Court's instructions." The record shows that jurors 8, 11, 16, and 21 responded to
this question. The record does not include any response to this question concerning
mental anguish damages by the three jurors that Urista complains of here, prospective
jurors 29, 32, and 33.

 The trial court individually brought prospective jurors 29, 32, and 33 to the
bench and the court questioned each of the jurors, but did not allow the attorneys to
ask any further questions of the individual jurors. The court inquired of each juror
whether there was any reason that the juror would not be able to listen to the
instructions about the law and be fair to both sides in the case. Each juror reported
that he or she could follow the law and be fair to both sides in the case. 

 Urista's attorney requested the opportunity to individually question the three
jurors because "they said they could not award money for mental anguish," but the
court responded to the request by stating, "I don't think that's a proper
characterization of what they said." The trial court also said that "after we're done,"
Urista's attorney would be allowed to "make a record" concerning the trial court's
refusal to allow individual questioning of the jurors. After the trial court ruled on all
the challenges for cause, Urista's attorney stated, "I'm sorry, Judge, I do have a
couple of things I would like to put on the record. Does the Court want me to do that
after the jury is let go?" The trial court responded in the affirmative. While the jury
was in recess and before he began making his peremptory strikes, Urista's attorney
objected to the trial court's refusal to allow individual voir dire of the three jurors
because he had relied on the trial court's earlier representation that it would be
allowed. Urista's attorney said that had he known the trial court would not be
allowing the individual voir dire, he would have further explored biases and
prejudices of these three jurors while conducting voir dire of the group. 

 In his objections to the trial court's refusal to allow the individual voir dire of
these three jurors, Urista's attorney said that he was "not able to ask the questions that
[he] needed to ask in order to present them" and that he was "denied the opportunity
to go into some areas due to the Court's instructions." After confirming that Urista
had made all the objections he wished to make, the trial court stated, 

 The Court will note for the record that counsel has mischaracterized the
instructions given to counsel, both on the record and off the record
regarding voir dire. And the Court afforded the parties 30 minutes to
conduct voir dire and, then, to move for grounds for disqualification. 
And I did inform counsel that they would be able to have [venire
members] approach the Bench, so they could follow-up on specific
areas, which have already been covered, not so that they could have free
reign to do additional voir dire. And also mention to counsel that he
spent a significant time arguing the facts of the case and arguing the law,
as opposed to asking questions. Also for the record, that counsel has not
suggested or put on the record, prior to me making this ruling, any
specific questions which he was denied the opportunity to ask. 
Therefore, I'm overruling the objection.


 To preserve error from the denial of the opportunity to conduct voir dire, Urista
had the burden to make a record to show the specific manner in which he intended to
pursue his inquiry. See Hyundai Motor Co., 189 S.W.3d at 758. When group voir
dire on the subject matter complained of on appeal has been allowed, error is not
preserved unless counsel identifies the specific areas of inquiry he wishes to pursue
during individual voir dire. See id. The trial court allowed voir dire about mental
anguish damages, and these jurors did not respond. See id. We hold that because
Urista failed to plainly present an objection to the trial court that included the specific
areas of inquiry he wished to pursue, he failed to preserve any error for our review. 
See id. 

 We overrule Urista's third issue.

Charge Error

 In his fourth issue, Urista contends that the trial court erred in submitting, over
Urista's objection, the following instructions in the jury charge:

 An occurrence may be an "unavoidable accident," that is, an event not
proximately caused by the negligence of any party to it.


"New and independent cause" means the act or omission of a separate
or independent agency, not reasonably foreseeable, that destroys the
causal connection, if any, between the act or omission inquired about
and the occurrence in question and thereby becomes the immediate
cause of such occurrence. 

 

We review charge error under an abuse of discretion standard. In re V.L.K., 24
S.W.3d 338, 341 (Tex. 2000). The trial court is required to submit requested
instructions to the jury only if the pleadings and evidence support them. Tex. R. Civ.
P. 278; Harris County v. Smith, 96 S.W.3d 230, 236 (Tex. 2002) (citing Elbaor v.
Smith, 845 S.W.2d 240, 243 (Tex. 1992)). 

 A. Unavoidable Accident

 The supreme court held that the trial court's inclusion of the unavoidable
accident instruction in this case was harmless error. Urista II, 211 S.W.3d at 759-60. 
We will not revisit that issue.

 B. New and Independent Cause

 Urista also contends that the trial court erred in submitting to the jury an
instruction on "new and independent cause" when no evidence was introduced to
support such a finding. 

 A "new and independent cause" is defined as an act or omission of a separate
and independent nature which destroys the causal connection between the negligent
act or omission of the tortfeasor and the injury complained of, and thereby becomes
the immediate cause of such injury. Darwin v. Fugit, 914 S.W.2d 621, 626 (Tex.
App.--Fort Worth 1995, writ denied) (citing Galvan v. Fedder, 678 S.W.2d 596, 598
(Tex. App.--Houston [14th Dist.] 1984, no writ)); Young v. Massey, 128 Tex. 638,
641, 101 S.W.2d 809, 810 (1937). Here, BBB did not present any evidence that
Urista's injury resulted from the act or omission of a separate and independent nature. 
Consequently, the trial court erred in submitting the new-and-independent-cause
instruction. See Darwin, 914 S.W.2d at 626.

 But to obtain reversal of a judgment based on charge error, Urista must show
that the incorrect jury instruction probably caused the rendition of an improper
judgment. Tex. R. App. P. 44.1(a)(1); Urista II, 211 S.W.3d at 757. It is a rare case
in which the incorrect inclusion of "new and independent cause" in the jury charge
is reversible error. Galvan, 678 S.W.2d at 599. After examining the record, we
cannot conclude that the inclusion of the new-and-independent-cause instruction
harmed Urista. 

 At trial, substantial evidence of other causes of Urista's injury was introduced,
which mitigated against a finding that the incident at the BBB store was a proximate
cause of Urista's injury. Testimony from Urista's wife and doctor established that,
before the store incident, Urista had suffered two prior back injuries that required
significant medical attention. These injuries resulted from the 1995 automobile
accident and the 1996 work-related accident. The jury, faced with these prior
instances, likely concluded that Urista's back injury resulted from prior events
unrelated to the store incident. We cannot conclude that the new-and-independent-cause instruction probably caused an improper verdict. 

 Although the trial court erred in submitting instructions on "unavoidable
accident" and "new and independent cause" in the jury charge, we hold that Urista
has not shown that he was harmed by the inclusion of these instructions. See Tex. R.
App. P. 44.1(a)(1); Urista II, 211 S.W.3d at 757.

 We overrule Urista's fourth issue. 

Factual Sufficiency

 In his fifth issue, Urista challenges the factual sufficiency of the evidence
supporting the jury's finding that BBB was not liable for Urista's injury. Urista had
the burden of proof at trial. Therefore, to prevail on appeal, Urista must show that the
adverse finding is against the great weight and preponderance of the evidence. Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001). We must consider and weigh
all of the evidence, and we will set aside a verdict only if the evidence is so weak or
if the finding is so against the great weight and preponderance of the evidence that
it is clearly wrong and unjust. Id.; see Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986). In doing so, we must "detail the evidence relevant to the issue" and
"state in what regard the contrary evidence greatly outweighs the evidence in support
of the verdict." Dow Chem. Co., 46 S.W.3d at 242; see also Pool, 715 S.W.2d at 635.

 However, we remain mindful that the jury is the sole judge of the credibility
of the witnesses and the weight to be given their testimony. See McGalliard v.
Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). The jury may believe one witness and
disbelieve another and resolve inconsistencies in any testimony. Id. We cannot
substitute our opinion for that of the jury or determine that we would have weighed
the evidence differently or reached a different conclusion. Hollander v. Capon, 853
S.W.2d 723, 726 (Tex. App.--Houston [1st Dist.] 1993, writ denied). 

 In support of his claims, Urista testified and presented testimony from David
Traxler, BBB's corporate representative, who was also the manager of the store where
Urista claims he was hit by a trash can, and from his wife, Geovanna Urista, who was
shopping with Urista when the incident occurred. Traxler testified as a representative
of BBB. He said that an investigation was done, and that Urista was not negligent
that day, nor was he aware of any evidence that any customers or other third parties
caused the incident. He stated that trash cans fell that day, but so did other
merchandise, and he said he did not know what hit Urista. Traxler "guessed" that a
store employee knocked the trash cans down while standing on a ladder, working on
the other side of the shelves. He said, "I believe that human error caused it. [A store
employee] made a mistake and accidentally knocked it over. I don't think he was
acting in an unsafe manner. I don't think he was doing anything to possibly cause an
accident. I think he was aware of what he was doing and made a mistake." In
addition, Traxler noted that by the time he arrived at the scene, the area had been
cleaned up and Urista seemed "fine" and declined his offers of assistance.

 Geovanna Urista, Rafael Urista's wife, testified that they went to BBB in the
afternoon to shop for items for their new home. She said that she watched as two
stacks of four or five hard plastic trash cans tumbled from the topmost shelf and
landed on or near her husband, who was knocked unconscious for about two minutes. 
Upon awakening, Rafael complained of a headache and dizziness. Geovanna said
that Urista wanted to leave the store, but they continued to walk around the store
because she was concerned that he might "have a seizure or pass out on me." She
also testified that Urista sustained scratches on his leg when broken dishes and
glassware ripped his pants. Contrary to Traxler's testimony, Geovanna said that no
BBB employee offered medical help or showed them to a place to sit down. 

 Rafael also testified at trial. He said that while looking at dishes at BBB with
his young daughter, he was struck in the head, knocked unconscious "for some time." 
He testified that when he awoke laying on the floor, he was dizzy, disoriented, his
head hurt, and he felt sore to the touch. He saw broken dishes around him when he
got up, as well as trash cans, including one that had shattered into many pieces. He
also recalled that his jeans were torn and that there was a slight amount of blood
around the torn fabric. He said that he wanted to leave the store immediately, but
upon his wife's urging, he agreed to stay for a short time to be certain he was "okay." 
He said he did not see Traxler until he had left the immediate area, while walking
around the store.

 On the other hand, and as the supreme court observed,

 BBB chose to defend this case principally by attacking Urista's
credibility. Urista and his wife were the only witnesses to his being
struck in the head by the trash cans. And while this claim was not
directly challenged by BBB, as it would have been difficult to do so in
the absence of other witnesses, BBB did vigorously challenge Urista's
claim to have been injured as a result of the incident. As we have
already noted, the evidence at trial showed that after the incident
occurred, Urista declined the manager's offer of assistance and did not
report being knocked unconscious or that he had been injured. 
Moreover, he continued with his shopping before leaving the store. 
Urista also admitted that he had a pre-existing back injury, that he did
not complain of pain immediately after the accident, that medical tests
taken after the incident did not reveal any changes in Urista's back, and
that Urista's medical records describing his injuries as work-related
were changed by Urista's doctor, at the request of Urista's lawyer, to say
the injuries were caused by the BBB accident. After hearing this
evidence, the jury could quite reasonably have disbelieved Urista's
testimony that he had actually been struck by the trash cans that fell off
the shelf. In short, the jury could simply have concluded that Urista
failed to prove that BBB was negligent.


Urista II, 211 S.W.3d at 757-58. Upon this record, "It is reasonable to conclude that
Urista failed to carry his burden of proof." Id. at 757. Accordingly, we hold that the
jury's verdict was not so against the great weight and preponderance of the evidence
that it was clearly wrong and unjust. Dow Chem. Co., 46 S.W.3d at 242.

 We overrule Urista's fifth issue. 

Conclusion


 Having overruled all of Urista's remaining issues, we affirm the judgment of
the trial court.




 Elsa Alcala


 Justice


Panel consists of Justices Taft, Jennings, and Alcala.