COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-06-363-CV

 

 

ROBERT GENE CUNNINGHAM, INDIVIDUALLY AND                 APPELLANTS

AS
REPRESENTATIVE OF THE ESTATE OF 

PATRICIA
MAUDINE CUNNINGHAM, 

DECEASED,
TRACY JEANNE CUNNINGHAM 

LANG,
AND ROBIN LEE CUNNINGHAM BISHOP

 

                                                   V.

 

BLUE CROSS BLUE SHIELD OF TEXAS,                                      APPELLEE

A
DIVISION OF HEALTH CARE SERVICE 

CORPORATION,
A MUTUAL LEGAL 

RESERVE
COMPANY

 

                                              ------------

 

           FROM
THE 141ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                   MEMORANDUM
OPINION[1] ON
REHEARING

 

                                              ------------








On Appellants= motion for rehearing, we withdraw our October 4, 2007 opinion and
judgment, substitute the following, and deny the motion for rehearing.  Our ultimate holding remains unchanged.








                                          I.  Introduction

Appellants Robert Gene
Cunningham, individually and as representative of the estate of Patricia
Maudine Cunningham, deceased; Tracy Jeanne Cunningham Lang; and Robin Lee
Cunningham Bishop appeal from the trial court=s grant of summary judgment in favor of Appellee Blue Cross Blue
Shield of Texas (ABCBSTX@).  We affirm.

                          II. 
Factual and Procedural Background

For the purposes of the
summary judgment proceedings, BCBSTX accepted as true all of the facts asserted
in Appellants=
petition.  The following facts are drawn
from that petition.[2]

In May 2003, Robert=s wife, Patricia, began suffering from trigeminal neuralgia, a
disorder that caused her such intense pain on the left side of her jaw that she
was unable to eat or drink.  After caring
for his wife at the couple=s home for approximately one week, Robert admitted Patricia to Plaza
Medical Center for treatment.  By this
time, Patricia had become malnourished and was in need of nutritional support
by a feeding tube.  However, during her
stay at Plaza, doctors did not provide Patricia with non-oral feedings.  She eventually died from complications of
malnutrition.








At the time of her illness,
Patricia was provided health coverage by the Texas Health Insurance Risk Pool (Athe Pool@), a
legislatively created pool aimed at providing otherwise uninsurable individuals
with access to health insurance. See Tex.
Ins. Code Ann. '
1506.101(a)(1) (Vernon Supp. 2006); Act of May 27, 1989, 71st Leg., R.S., ch.
1094, 1989 Tex. Gen. Laws 4477.  BCBSTX
served as the Aadministrator@ and Acase manager@ under the terms of Patricia=s health insurance policy.  The
policy=s outline of coverage provided that BCBSTX, as administrator, would
pay Athe benefits of the [p]olicy for [c]overed [e]xpenses incurred by the
[i]nsured [p]ersons@ and, as
case manager, would Awork with
[the insured] and [the insured=s] physician to determine the appropriate level of care@ needed.   

As a means of paying claims
under the policy, BCBSTX independently contracted with a number of health care
facilities to establish flat reimbursement rates for all medical services and
procedures provided by those facilities to Pool members.  Plaza Medical Center=s parent company, HCA, Inc., entered into such an agreement with
BCBSTX and agreed to have BCBSTX reimburse all of its hospitals in the
Dallas-Fort Worth area, including Plaza, for its services at Medicare DRG (Adiagnostic related group@) rates.[3]  








After Patricia=s death, Robert and his two daughters, referred to collectively
hereinafter as AAppellants,@ filed the underlying suit against BCBSTX alleging claims of
negligence, breach of contract, fraud, fraudulent inducement, negligent
misrepresentation, intentional infliction of emotional distress, breach of the
duty of good faith and fair dealing, and violations of the DTPA and former
article 21.21 of the insurance code.[4]  In their petition, Appellants alleged that
BCBSTX failed to (1) disclose the material terms of its reimbursement agreement
with Plaza and (2) provide adequate case management under the terms of Patricia=s policy.  Appellants asserted
that had they been informed that BCBSTX only reimbursed Plaza for its services
at Medicare DRG rates, which Appellants contend are too low and below cost,
they either would not have agreed to be covered under the policy or would have
sought medical care for Patricia at another facilityCarguing that BCBSTX=s reimbursement scheme created a financial disincentive for Plaza to
provide its patients with adequate medical care.       








On March 6, 2006, BCBSTX
filed a traditional motion for summary judgment asserting that, as a matter of
law, (1) Aplaintiff=s theory of causation is too remote and does not constitute legal
causation . . .@ and (2) it
had no duty to disclose to Appellants its contractual reimbursement rates with
Plaza. [Emphasis in original.] 
Appellants filed special exceptions to the motion as well as objections
to BCBSTX=s summary
judgment proof.  Appellants also filed a
response and a cross-motion for summary judgment on all of their respective
causes of action.  After conducting a
hearing on both motions, the trial court denied Appellants= cross-motion and granted summary judgment in favor of BCBSTX without
specifying the grounds.  BCBSTX then
severed this action from the remaining claims being asserted against the other
defendants, and this appeal followed.  

                                      III.  Issues Presented

Appellants now contend in
three issues that the trial court erred by granting summary judgment in favor
of BCBSTX[5]
and by denying them summary judgment relief on their cross-motion.  Additionally, Appellants have filed two
motions with this court seeking to strike various portions of BCBSTX=s appellate brief.  BCBSTX has
also filed a motion to strike the affidavit of Robert Cunningham which
Appellants filed in the trial court in support of their response and
cross-motion.  Before turning to the
merits of this appeal, we will first address the pending motions.








                                                        IV.  Motions to Strike

Appellants= motions complain that various portions of BCBSTX=s brief do not comply with the rules of appellate procedure.  Specifically, they contend that BCBSTX=s AStatement of
the Case@ and AStatement of
Facts@ sections lack appropriate record references, are argumentative, and
contain statements of fact that are not contained in the record.  They also contend that the AArgument@ section
inappropriately refers to deposition testimony that is not part of the
record.  We have reviewed BCBSTX=s brief and do not find the type of flagrant violations that would
justify striking the complained‑of portions.  See Tex.
R. App. P. 38.9(a).  Because
appellate briefs are meant to acquaint a court with the issues in a case and to
present argument that will enable the court to decide the case, we construe the
briefing rules liberally and only require substantial compliance.  Tex.
R. App. P. 38.9.  Here, despite
Appellants= complaints,
we conclude that BCBSTX=s brief
substantially complies with the briefing rules and, accordingly, deny
Appellants=
motions.  However, we note that we have
not considered, for any purpose, any factual assertions made by BCBSTX in its
brief that are not supported in the record, nor has BCBSTX=s reference to them played any part in our disposition of this case.








Additionally, we find it
unnecessary to consider BCBSTX=s motion to strike the Cunningham affidavit because, as illustrated by
our analysis below, none of the statements contained therein create a fact
issue with respect to any of the summary judgment grounds set forth in BCBSTX=s motion.  Thus, even if we
consider the contents of the affidavit, our resolution of the issues presented
in this appeal remain the same.  Having
dispensed with these motions, we now review the propriety of the trial court=s order.

                           V.  Discussion

A.     Standard of Review

In a summary judgment case,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.








When reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  Valence Operating
Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Evidence that favors the movant=s position will not be considered unless it is uncontroverted.  Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).       A
defendant who conclusively negates at least one essential element of a cause of
action is entitled to summary judgment on that claim.  IHS Cedars Treatment Ctr. of Desoto, Tex.,
Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).  Once the defendant produces sufficient
evidence to establish the right to summary judgment, the burden shifts to the
plaintiff to come forward with competent controverting evidence raising a
genuine issue of material fact with regard to the element challenged by the
defendant.  Centeq Realty, Inc. v.
Siegler, 899 S.W.2d 195, 197 (Tex. 1995). 


When a trial court grants the
defendant=s motion
without specifying the ground upon which it based its ruling, the summary
judgment will be affirmed if any of the theories advanced are meritorious.  Carr v. Brasher, 776 S.W.2d 567, 569
(Tex. 1989).  However, when both parties
move for summary judgment and the trial court grants one motion and denies the
other, the reviewing court should review both parties= summary judgment evidence and determine all questions presented.  Valence Operating Co., 164 S.W.3d at
661.  The reviewing court should render
the judgment that the trial court should have rendered.  Id.

B.     Summary Judgment Grounds








As a preliminary issue,
Appellants complain that BCBSTX=s motion failed to set forth specific summary judgment grounds with
respect to each of their asserted causes of action.  See McConnell v. Southside Indep. Sch. Dist.,
858 S.W.2d 337, 339 (Tex. 1993) (plurality op.).   

Rule 166a(c) states that a Amotion for summary judgment shall state the specific grounds therefor.@  Tex. R. Civ. P. 166a(c). 
Grounds are sufficiently specific so long as they provide the nonmovant
with Afair notice@ of the
basis upon which judgment is sought.  Westchester Fire Ins. Co. v. Alvarez, 576
S.W.2d 771, 773 (Tex. 1978), overruled on other grounds by City of Houston
v. Clear Creek Basin Authority, 589 S.W.2d 671, 673 (Tex. 1979); Dear v.
City of Irving, 902 S.W.2d 731, 734 (Tex. App.CAustin 1995, writ denied).  A
defendant‑movant is not entitled to summary judgment on the entirety of a
nonmovant-plaintiff=s case
unless the motion addresses each cause of action asserted by the
nonmovant.  Sledge v. Mullin, 927
S.W.2d 89, 95 (Tex. App.CFort Worth
1996, no writ).

Here, BCBSTX=s motion states in pertinent part as follows:

[BCBSTX] moves for summary judgment dismissal of
all plaintiff=s
claims based on no duty and no legal causation.

 

. . .
.

 








BCBSTX respectfully submits that the Court has
power to grant a complete summary judgment on two questions of law that
independently undercut plaintiff=s claims.  First ground: 
BCBSTX moves for complete summary judgment because the plaintiff=s
theory of causation is too remote and does not constitute legal causation under
Texas law.  BCBSTX as a matter of law did
not legally cause the alleged injuries or any of the alleged medical or
facility negligence.  The necessary
elements of causation fails as a matter of law. 
Second ground:  BCBSTX as a legal
threshold did not have a legal duty to affirmatively provide its
contractual reimbursement rates with Texas hospitals to THIRP members, nor did
it have any other duty to plaintiff alleged to have caused damages to plaintiff
in the Petition as a matter of law.

 








This language quite clearly
establishes that BCBSTX sought summary judgment with respect to all of
Appellants= causes of
action.  The motion was directly aimed at
Aall [of] plaintiff=s claims@ and
expressly requested that the trial court grant Acomplete summary judgment@ in favor of BCBSTX.  The motion
also clearly indicates that BCBSTX sought summary judgment on two specific
grounds:  the absence of a legal duty and
lack of causation.  While only some of
Appellants= asserted
causes of action require the existence of a legal duty in order to be
actionable, see Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001)
(dealing with fraud by nondisclosure); Doe v. Boys Clubs of Greater Dallas,
Inc., 907 S.W.2d 472, 477 (Tex. 1995) (dealing with negligence); Arnold
v. Nat=l County
Mut. Fire Ins. Co., 725 S.W.2d 165, 167 (Tex.
1987) (dealing with breach of duty of good faith and fair dealing); Darwin
v. Fugit, 914 S.W.2d 621, 627 (Tex. App.CFort Worth 1995, writ denied) (holding breach of contract-contractual
duty or obligation required), all of the causes of action asserted by Appellant
require causation.  Tex. Farm Bureau
Mut. Ins. Cos. v. Sears, 84 S.W.3d 604, 610 (Tex. 2002) (concerning
intentional infliction of emotional distress); Provident Am. Ins. Co. v.
Castaneda, 988 S.W.2d 189, 193 (Tex. 1998) (concerning claims under former
article 21.21); Gym‑N‑I Playgrounds, Inc. v. Snider, 158
S.W.3d 78, 85 (Tex. App.CAustin
2005), aff=d, 220 S.W.3d 905 (Tex. 2007) (concerning negligence, DTPA, fraud,
fraudulent inducement, breach of the duty of good faith and fair dealing); Darwin,
914 S.W.2d at 627 (concerning breach of contract); see MCN Energy
Enters., Inc. v. Omagro de Colombia, L.D.C., 98 S.W.3d 766, 771 (Tex. App.CFort Worth 2003, pet. denied) (concerning negligent
misrepresentation).  Thus, a reasonable
reading of the motion is that BCBSTX sought summary judgment on each of
Appellants= causes of
action based upon either the absence of a legal duty or lack of causation or
both.  Because the motion addressed all
of Appellants= claims and
provided them with fair notice of the grounds upon which BCBSTX sought summary
judgment, we conclude that Appellants= contention is without merit.

C.     Causation








Appellants next contend that
the trial court erred by granting summary judgment in favor of BCBSTX on the
basis of no causation because BCBSTX=s alleged wrongful conduct, i.e., failing to disclose its
reimbursement agreement with Plaza and failing to perform case management,
constituted a legal cause of Patricia=s death.  BCBSTX responds by
arguing, as it did in its motion, that the connection between its alleged
misconduct and Patricia=s death is
too remote to constitute legal causation as a matter of law.  We agree.








1.  Proximate and Producing Causation

In any cause of action,
whether grounded in tort, contract, or a hybrid of the two, causation is the
essential element necessary to attribute fault for one=s injuries to another.  Wheaton
Van Lines, Inc. v. Mason, 925 S.W.2d 722, 728 (Tex. App.CFort Worth 1996, writ denied). 
Proximate cause is the causation standard applicable to claims of
negligence, negligent misrepresentation, intentional infliction of emotional
distress, and breach of the duty of good faith and fair dealing.  Provident Am. Ins. Co., 988 S.W.2d at
193 n.13 (regarding breach of duty of good faith and fair dealing); Gen.
Motors Corp. v. Saenz, 873 S.W.2d 353, 357 (Tex. 1993) (regarding
negligence); Larsen v. Carlene Langford & Assocs., Inc., 41 S.W.3d
245, 250 (Tex. App.CWaco 2001,
pet. denied) (regarding negligent misrepresentation); see LaCoure v.
LaCoure, 820 S.W.2d 228, 234 (Tex. App.CEl Paso 1991, writ denied) (regarding intentional infliction of
emotional distress), disapproved of on other grounds in Durbin v. Dal‑Briar
Corp., 871 S.W.2d 263 (Tex. App.CEl Paso 1994, writ denied). 
Causes of action based on violations of the DTPA and former article
21.21 of the Texas Insurance Code require a showing of producing cause in order
for those claims to be actionable.  Tex. Bus. & Com. Code Ann. ' 17.50(a) (Vernon Supp. 2006) (setting out elements of DTPA claim); Provident
Am. Ins. Co., 988 S.W.2d at 193 (discussing article 21.21 claims).








Proximate and producing cause
differ in that foreseeability is an element of proximate cause but not of
producing cause.  Gen. Motors Corp.,
873 S.W.2d at 357.  Proximate cause
consists of both cause in fact and foreseeability.  Union Pump Co. v. Allbritton, 898
S.W.2d 773, 775 (Tex. 1995); Travis v. City of Mesquite, 830 S.W.2d 94,
98 (Tex. 1992).  Cause in fact means that
the defendant=s act or
omission was a substantial factor in bringing about the injury which would not
otherwise have occurred.  Union Pump
Co., 898 S.W.2d at 775.  A producing
cause is an Aefficient,
exciting, or contributing cause, which in the natural sequence, produced
injuries or damages complained of, if any.@  Haynes & Boone v. Bowser
Bouldin, Ltd., 896 S.W.2d 179 (Tex. 1995); Rourke v. Garza, 530
S.W.2d 794, 801 (Tex. 1975).  Common to
both proximate and producing cause is causation in fact, including the
requirement that the defendant=s conduct be a substantial factor in bringing about the plaintiff=s injuries.  Prudential Ins.
Co. v. Jefferson Assocs., Ltd., 896 S.W.2d 156, 161 (Tex. 1995); Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 472 n.1 (Tex. 1991) (quoting
Restatement (Second) of Torts ' 431 cmt. a (1965)).













A[C]ause in
fact is not established where the defendant's negligence does no more than
furnish a condition which makes the injuries possible.@  IHS Cedars Treatment Ctr., 143 S.W.3d at 799.  In other
words, the conduct of the defendant may be too attenuated from the resulting
injuries to the plaintiff to be a substantial factor in bringing about the
harm.  Id.[6]  The word Asubstantial@ is used to
denote the fact that the defendant=s conduct has such an effect in producing the harm as to lead
reasonable jurors to regard it as a cause, using that word in the popular
sense, in which there always lurks the idea of responsibility, rather than in
the so‑called Aphilosophic
sense,@ which includes every one of the great number of events without which
any happening would not have occurred. 
Lear Siegler, 819 S.W.2d at 472 (quoting Restatement (Second) of Torts ' 431 cmt. a (1965)). AThe evidence must go further, and show that such negligence was the
proximate, and not the remote, cause of resulting injuries . . . [and] justify
the conclusion that such injury was the natural and probable result thereof.@  Doe, 907 S.W.2d at 477;
see also, e.g., Boyd v. Fuel Distribs., Inc., 795 S.W.2d 266, 272 (Tex.
App.CAustin 1990, writ denied) (holding that a convenience store=s sale of beer to an eighteen year old was not the cause in fact of a
drunk driver=s fatal car
accident because the sale was to the passenger and not to the driver); Tex.
Am. Bank v. Boggess, 673 S.W.2d 398, 402 (Tex. App.CFort Worth 1984, writ dism=d by agr.) (ruling that a bank=s employment of a repossessor was not the cause in fact of the car
owner=s injuries because the owner was injured by a person that the
repossessor had hired without the bank=s knowledge).

Appellants= Sixth Amended Petition alleges three causal links between BCBSTX=s acts and omissions and Patricia=s death.  First, Appellants
contend that the low DRG reimbursement rates caused Plaza to render substandard
medical care to Patricia by Aput[ting] into place many risky and deficient practices, policies, and
procedures,@ which in
turn caused Patricia=s death by
starvation.  Second, Appellants contend
that BCBSTX=s failure to
disclose the DRG reimbursement rate to Patricia caused her to go to and stay in
Plaza when she would have gone to another hospital if BCBSTX had disclosed the
DRG agreement.  Third, Appellants contend
that BCBSTX=s failure to
provide case management, utilization review, and quality assurance functions on
Patricia=s behalf caused her death because BCBSTX failed to order her doctors
to insert a feeding tube.[7]  We will consider each alleged causal link in
turn.








The first alleged causal linkBthat the DRG reimbursement rate caused Plaza to render substandard
care which in turn caused Patricia=s deathCis too
remote as a matter of law to serve as a proximate or producing cause of
Patricia=s death.   BCBSTX did not
unilaterally impose the DRG rates on Plaza; rather, as Appellants alleged in
their petition, Plaza contractually agreed to accept the DRG rates.  Having agreed to treat BCBSTX insureds like
Patricia, Plaza had an independent duty to provide adequate medical care
regardless of the reimbursement rate. 
Thus, even if Plaza rendered substandard care in an effort to make a
profit under the DRG rates, as Appellants allege, there is no causal link
between any act or omission on the part of BCBSTX and the care rendered by
Plaza.  No reasonable juror could believe
that BCBSTX caused Plaza to render substandard care.  Moreover, Robert Cunningham averred in his
summary judgment affidavit that on the second day of Patricia=s hospitalization, 

I
held what I called a Astaff
meeting,@
during which I told the nurses and all present, which included at least one
doctor, that we weren=t
part of any special rate deals.  I told
them that we were going to pay full price for the hospital bill, whatever it
turned out to be, and we expected full service. 

 

Robert=s promise to pay the full medical bill would further attenuate any
causal connection, if one existed, between the DRG rate and the level of care
provided by Plaza to the point of legal insignificance.








The second alleged causal
linkCthat BCBSTX=s failure to
disclose the DRG rate caused Patricia=s death because it induced her to stay at PlazaCfails for the same reason. 
There is no causal connection between BCBSTX and Plaza=s alleged decision to render substandard care to profit under the DRG
rate agreement; thus, there can be no causal link between BCBSTX=s failure to  disclose the DRG
rate and the level of care rendered by Plaza. 


The third alleged causal linkCthat BCBSTX caused Patricia=s death by failing to provide case management and utilization review
and failing to order her doctors to insert a feeding tubeCalso falls short of the legal causation threshold.  Appellants cite the words that A[BCBSTX=s] Case
Manager will work with You and Your physician to determine the level of care
you need@ as Aproof that
[BCBSTX] failed to perform as promised, which in this case would mean
contacting Patricia=s doctors to
facilitate an order for the feeding tube that BCBSTX knew was needed.@  We note, however, that the
words on which Appellants rely appear not in BCBSTX=s policy but in a document named AOutline of Major Coverage,@ which, in its first numbered paragraph, provides,

AThis is not the insurance policy and only the actual Policy provisions
will control.@  The actual policy provides as follows:








CASE
MANAGEMENT:  The
Case Manager will assess the continuing care needs in catastrophic and chronic
high cost medical care cases and discuss with the attending Physician more
efficient alternative means of medical care. 
Unless otherwise shown on the Policy Schedule, the Case Manager is the
Administrator.  Coverage may be provided
for more efficient alternatives, even though such alternatives are not
specifically stated in this Policy. 
Coverage for alternative care is subject to the same overall Lifetime
Maximum, Deductible, Copayment and/or Coinsurance requirements that apply to
the medical care being replaced.  The
alternative care must be:  mutually
agreed to by the Insured Person, the treating Physicians, and Us; and a cost
effective alternative to benefits otherwise provided by the Policy. 

 

Thus, BCBSTX=s Acase
management@ duty was
limited to assessing continuing needs in catastrophic and chronic high cost
cases and discussing more cost-effective, alternative methods of care with
Patricia=s treating physicians; it did not have a duty to order her physicians
to insert a feeding tube.  And even if
BCBSTX breached its duty to perform case management as set out in the policy by
failing to discuss with Patricia=s physicians more efficient and alternative means of medical care,
nothing in Appellants= pleading
suggests that a breach of that duty caused Patricia=s death.

We therefore hold that
Appellants failed to allege an act or omission on the part of BCBSTX that was a
substantial factor in causing Patricia=s death.  Thus, BCBSTX=s conduct was not a proximate or producing cause of Patricia=s death, and the trial court did not err by granting summary judgment
in favor of BCBSTX on Appellants= negligence, negligent misrepresentation, intentional infliction of
emotional distress, breach of the duty of good faith and fair dealing, DTPA,
and article 21.21 claims.








2.     Appellants= Remaining Claims








With respect to Appellants= breach of contract, fraud, and fraudulent inducement claims,
alternative causation standards apply. 
Although similar, proximate causation is not the causal standard
applicable in a breach of contract action. 
Abraxas Petroleum Corp. v. Hornburg, 20 S.W.3d 741, 758 n.12
(Tex. App.CEl Paso
2000, no pet.)  Rather, actual damages
are recoverable only if a plaintiff shows that the injury complained of was the
natural, probable, and foreseeable consequence of the defendant=s breach.  Mead v. Johnson
Group, Inc., 615 S.W.2d 685, 687 (Tex. 1981).  With regard to fraud and fraudulent
inducement claims, the appropriate causation standard depends upon the type of
actual damages sought by the plaintiff.  See
Scott v. Sebree, 986 S.W.2d 364, 371 (Tex. App.CAustin 1999, pet. denied) (distinguishing between general and special
damages and the causation standard applicable to each).  When general or direct damages are sought, a
plaintiff must show that the damages were the necessary and usual result of the
defendant=s wrongful
act, i.e., they flow naturally and necessarily from the wrong.  Arthur Anderson & Co. v. Perry Equip.
Corp., 945 S.W.2d 812, 816 (Tex. 1997); see also Scott, 986 S.W.2d
at 371 (A[a] defrauded party is entitled to those damages resulting directly
and naturally from fraud as general damages@).  When special or
consequential damages are sought, the plaintiff must demonstrate that those
damages proximately resulted from the fraud alleged.  Libhart v. Copeland, 949 S.W.2d 783,
800 (Tex. App.CWaco 1997,
no writ).

Applying these standards, we
conclude that Appellants= remaining
claims also fail as a matter of law due to lack of causation for the reasons
stated above.  Patricia=s death was not the natural, probable, and foreseeable consequence of
any of BCBSTX=s conduct,
nor was it the type of injury that resulted directly from the wrongful acts
alleged.  Therefore, the trial court did
not err by granting summary judgment on Appellants= claims for breach of contract, fraud, and fraudulent inducement.  We overrule Appellants= first issue.  Because our
holding on causation is dispositive, we need not address Appellants= remaining issues.

                                          VI.  Conclusion

Having determined that all of
Appellants= claims fail
as a matter of law due to lack of causation, we affirm the trial court=s judgment.

 

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   DAUPHINOT, HOLMAN, and GARDNER, JJ.

 

DELIVERED:  February 21, 2008











[1]See Tex. R. App. P. 47.4.





[2]Appellants
also urge this court to accept as Aagreed@
legal conclusions alleged in their petition. 
We decline to do so.





[3]Medicare
DRG rates are the flat rates Medicare pays for medical care and services
provided to Medicare patients by health care providers. 





[4]Appellants
also sued Plaza Medical Center, four of Patricia=s
treating physicians, and the registered nurse responsible for her care during
her hospitalization for medical negligence. 
However, those claims are not at issue in this appeal. 





[5]This
issue is sufficient to challenge the summary judgment on all grounds upon which
it could have been granted.  See
Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970); see also
Star‑Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995)
(reaffirming Malooly).





[6]Despite
this recent authority from the supreme court, Appellants argue in their motion
for rehearingCbased
on their interpretation of a draft revision of the Restatement (Third) of TortsCthat
the Asubstantial
factor rule@
should be or has been abandoned.  We
decline their invitation to overrule supreme court precedent.





[7]Appellants=
pleading is vague on this point, but their brief spells out the alleged causal
connection in greater detail.