COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-06-363-CV

ROBERT GENE CUNNINGHAM, INDIVIDUALLY AND APPELLANTS

AS REPRESENTATIVE OF THE ESTATE OF 

PATRICIA MAUDINE CUNNINGHAM, 

DECEASED, TRACY JEANNE CUNNINGHAM 

LANG, AND ROBIN LEE CUNNINGHAM BISHOP

V.

BLUE CROSS BLUE SHIELD OF TEXAS, APPELLEE

A DIVISION OF HEALTH CARE SERVICE 

CORPORATION, A MUTUAL LEGAL 

RESERVE COMPANY

------------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1) ON REHEARING

------------

On Appellants’ motion for rehearing, we withdraw our October 4, 2007 opinion and judgment, substitute the following, and deny the motion for rehearing.  Our ultimate holding remains unchanged.

I.  Introduction

Appellants Robert Gene Cunningham, individually and as representative of the estate of Patricia Maudine Cunningham, deceased; Tracy Jeanne Cunningham Lang; and Robin Lee Cunningham Bishop appeal from the trial court’s grant of summary judgment in favor of Appellee Blue Cross Blue Shield of Texas (“BCBSTX”).  We affirm.

II.  Factual and Procedural Background

For the purposes of the summary judgment proceedings, BCBSTX accepted as true all of the facts asserted in Appellants’ petition.  The following facts are drawn from that petition.
(footnote: 2)
 In May 2003, Robert’s wife, Patricia, began suffering from trigeminal neuralgia, a disorder that caused her such intense pain on the left side of her jaw that she was unable to eat or drink.  After caring for his wife at the couple’s home for approximately one week, Robert admitted Patricia to Plaza Medical Center for treatment.  By this time, Patricia had become malnourished and was in need of nutritional support by a feeding tube.  However, during her stay at Plaza, doctors did not provide Patricia with non-oral feedings.  She eventually died from complications of malnutrition.

At the time of her illness, Patricia was provided health coverage by the Texas Health Insurance Risk Pool (“the Pool”), a legislatively created pool aimed at providing otherwise uninsurable individuals with access to health insurance. 
See
 
Tex. Ins. Code Ann.
 § 1506.101(a)(1) (Vernon Supp. 2006); Act of May 27, 1989, 71st Leg., R.S., ch. 1094, 1989 Tex. Gen. Laws 4477.  BCBSTX served as the “administrator” and “case manager” under the terms of Patricia’s health insurance policy.  The policy’s outline of coverage provided that BCBSTX, as administrator, would pay “the benefits of the [p]olicy for [c]overed [e]xpenses incurred by the [i]nsured [p]ersons” and, as case manager, would “work with [the insured] and [the insured’s] physician to determine the appropriate level of care” needed.   

As a means of paying 
claims under the policy, BCBSTX independently contracted with a number of health care facilities to establish flat reimbursement rates for all medical services and procedures provided by those facilities to Pool members.  Plaza Medical Center’s parent company, HCA, Inc., entered into such an agreement with BCBSTX and agreed to have BCBSTX reimburse all of its hospitals in the Dallas-Fort Worth area, including Plaza, for its services at Medicare DRG (“diagnostic related group”) rates.
(footnote: 3)  

After Patricia’s death, Robert and his two daughters, referred to collectively hereinafter as “Appellants,” filed the underlying suit against BCBSTX alleging claims of negligence, breach of contract, fraud, fraudulent inducement, negligent misrepresentation, intentional infliction of emotional distress, breach of the duty of good faith and fair dealing, and violations of the DTPA and former article 21.21 of the insurance code.
(footnote: 4)  In their petition, Appellants alleged that BCBSTX failed to (1) disclose the material terms of its reimbursement agreement with Plaza and (2) provide adequate case management under the terms of Patricia’s policy.  Appellants asserted that had they been informed that BCBSTX only reimbursed Plaza for its services at Medicare DRG rates, which Appellants contend are too low and below cost, they either would not have agreed to be covered under the policy or would have sought medical care for Patricia at another facility—arguing that BCBSTX’s reimbursement scheme created a financial disincentive for Plaza to provide its patients with adequate medical care.       

On March 6, 2006, BCBSTX filed a traditional motion for summary judgment asserting that, as a matter of law, (1) “plaintiff’s theory of causation is 
too remote and does not constitute legal causation
 . . .” and (2) it had no duty to disclose to Appellants its contractual reimbursement rates with Plaza. [Emphasis in original.]  Appellants filed special exceptions to the motion as well as objections to BCBSTX’s summary judgment proof.  Appellants also filed a response and a cross-motion for summary judgment on all of their respective causes of action.  After conducting a hearing on both motions, the trial court denied Appellants’ cross-motion and granted summary judgment in favor of BCBSTX without specifying the grounds.  BCBSTX then severed this action from the remaining claims being asserted against the other defendants, and this appeal followed.  

III.  Issues Presented

Appellants now contend in three issues that the trial court erred by granting summary judgment 
in favor of BCBSTX
(footnote: 5) and by denying them summary judgment relief on their cross-motion.  Additionally, Appellants have filed two motions with this court seeking to strike various portions of BCBSTX’s appellate brief.  BCBSTX has also filed a motion to strike the affidavit of Robert Cunningham which Appellants filed in the trial court in support of their response and cross-motion.  Before turning to the merits of this appeal, we will first address the pending motions.

IV.  Motions to Strike

Appellants’ motions complain that various portions of BCBSTX’s brief do not comply with the rules of appellate procedure.  Specifically, they contend that BCBSTX’s “Statement of the Case” and “Statement of Facts” sections lack appropriate record references, are argumentative, and contain statements of fact that are not contained in the record.  They also contend that the “Argument” section inappropriately refers to deposition testimony that is not part of the record.  We have reviewed BCBSTX’s brief and do not find the type of flagrant violations that would justify striking the complained-of portions.  
See
 
Tex. R. App. P.
 38.9(a).  Because appellate briefs are meant to acquaint a court with the issues in a case and to present argument that will enable the court to decide the case, we construe the briefing rules liberally and only require substantial compliance.  
Tex. R. App. P.
 38.9.  
Here, despite Appellants’ complaints, we conclude that BCBSTX’s brief substantially complies with the briefing rules and, accordingly, deny Appellants’ motions.  However, we note that we have not considered, for any purpose, any factual assertions made by BCBSTX in its brief that are not supported in the record, nor has BCBSTX’s reference to them played any part in our disposition of this case.

Additionally, we find it unnecessary to consider BCBSTX’s motion to strike the Cunningham affidavit because, as illustrated by our analysis below, none of the statements contained therein create a fact issue with respect to any of the summary judgment grounds set forth in BCBSTX’s motion.  Thus, even if we consider the contents of the affidavit, our resolution of the issues presented in this appeal remain the same.  Having dispensed with these motions, we now review the propriety of the trial court’s order.

V.  Discussion

A. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979). 
 
The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
Sw. Elec. Power Co., 
73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
  Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).
  
Evidence that favors the movant’s position will not be considered unless it is uncontroverted.  
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).
   
A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.
  IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004).
  Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.  
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).  

When a trial court grants the defendant’s motion without specifying the ground upon which it based its ruling, the summary judgment will be affirmed if any of the theories advanced are meritorious.  
Carr v. Brasher
, 776 S.W.2d 567, 569 (Tex. 1989).  However, 
when both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties’ summary judgment evidence and determine all questions presented.  
Valence Operating Co.
, 164 S.W.3d at 661.  The reviewing court should render the judgment that the trial court should have rendered.  
Id
.

B. Summary Judgment Grounds

As a preliminary issue, Appellants complain that BCBSTX’s motion failed to set forth specific summary judgment grounds with respect to each of their asserted causes of action. 
 See McConnell v. Southside Indep. Sch. Dist.
, 858 S.W.2d 337, 339 (Tex. 1993) (plurality op.).   

Rule 166a(c) states that a “motion for summary judgment shall state the specific grounds therefor.” 
 
Tex. R. Civ. P.
 166a(c).  Grounds are sufficiently specific so long as they provide the nonmovant with “fair notice” of the basis upon which judgment is sought. 
 Westchester Fire Ins. Co. v. Alvarez
, 576 S.W.2d 771, 773 (Tex. 1978), 
overruled on other grounds by City of Houston v. Clear Creek Basin Authority
, 589 S.W.2d 671, 673 (Tex. 1979); 
Dear v. City of Irving
, 902 S.W.2d 731, 734 (Tex. App.—Austin 1995, writ denied).  A defendant-movant is not entitled to summary judgment on the entirety of a nonmovant-plaintiff’s case unless the motion addresses each cause of action asserted by the nonmovant.  
Sledge v. Mullin,
 927 S.W.2d 89, 95 (Tex. App.—Fort Worth 1996, no writ).

Here, BCBSTX’s motion states in pertinent part as follows:

[BCBSTX] moves for summary judgment dismissal of all plaintiff’s claims based on no duty and no legal causation.

. . . .

BCBSTX respectfully submits that the Court has power to grant a complete summary judgment on two questions of law that independently undercut plaintiff’s claims.  First ground:  BCBSTX moves for complete summary judgment because the plaintiff’s theory of causation is 
too remote and does not constitute legal causation 
under Texas law.  BCBSTX as a matter of law did not legally cause the alleged injuries or any of the alleged medical or facility negligence.  The necessary elements of causation fails as a matter of law.  Second ground:  BCBSTX as a legal threshold 
did not have a legal duty 
to affirmatively provide its contractual reimbursement rates with Texas hospitals to THIRP members, nor did it have any other duty to plaintiff alleged to have caused damages to plaintiff in the Petition as a matter of law.

This language quite clearly establishes that BCBSTX sought summary judgment with respect to 
all
 of Appellants’ causes of action. 
 The motion was directly aimed at “all [of] plaintiff’s claims” and expressly requested that the trial court grant “complete summary judgment” in favor of BCBSTX.  The motion also clearly indicates that BCBSTX sought summary judgment on two specific grounds:  the absence of a legal duty and lack of causation.  While only some of Appellants’ asserted causes of action require the existence of a legal duty in order to be actionable, 
see
 
Bradford v. Vento,
 48 S.W.3d 749, 755 (Tex. 2001) (dealing with fraud by nondisclosure)
; Doe v. Boys Clubs of Greater Dallas, Inc.
, 907 S.W.2d 472, 477 (Tex. 1995) (dealing with negligence);
 
Arnold v. Nat’l County Mut. Fire Ins. Co., 
725 S.W.2d 165, 167 (Tex. 1987) (dealing with breach of duty of good faith and fair dealing);
 Darwin v. Fugit, 
914 S.W.2d 621, 627 (Tex. App.—Fort Worth 1995, writ denied) (holding breach of contract-contractual duty or obligation required), all of the causes of action asserted by Appellant require causation.  
Tex. Farm Bureau Mut. Ins. Cos. v. Sears
, 84 S.W.3d 604, 610 (Tex. 2002) (concerning intentional infliction of emotional distress); 
Provident Am. Ins. Co. v. Castaneda
, 988 S.W.2d 189, 193 (Tex. 1998) (concerning claims under former article 21.21);
 Gym-N-I Playgrounds, Inc. v. Snider,
 158 S.W.3d 78, 85 (Tex. App.—Austin 2005), 
aff’d, 
220 S.W.3d 905 (Tex. 2007) 
(concerning negligence, DTPA, fraud, fraudulent inducement, breach of the duty of good faith and fair dealing); 
Darwin, 
914 S.W.2d at 627 (concerning breach of contract);
 see MCN Energy Enters., Inc. v. Omagro de Colombia, L.D.C., 
98 S.W.3d 766, 771 (Tex. App.—Fort Worth 2003, pet. denied) (concerning negligent misrepresentation).  Thus, a reasonable reading of the motion is that BCBSTX sought summary judgment on each of Appellants’ causes of action based upon either the absence of a legal duty or lack of causation or both.  Because the motion addressed all of Appellants’ claims and provided them with fair notice of the grounds upon which BCBSTX sought summary judgment, we conclude that Appellants’ contention is without merit.

C. Causation

Appellants next contend that the trial court erred by granting summary judgment in favor of BCBSTX on the basis of no causation because BCBSTX’s alleged wrongful conduct, i.e., failing to disclose its reimbursement agreement with Plaza and failing to perform case management, constituted a legal cause of Patricia’s death.  BCBSTX responds by arguing, as it did in its motion, that the connection between its alleged misconduct and Patricia’s death is too remote to constitute legal causation as a matter of law.  We agree.

1.  Proximate and Producing Causation

In any cause of action, whether grounded in tort, contract, or a hybrid of the two, causation is the essential element necessary to attribute fault for one’s injuries to another.  
Wheaton Van Lines, Inc. v. Mason
, 925 S.W.2d 722, 728 (Tex. App.—Fort Worth 1996, writ denied).  Proximate cause is the causation standard applicable to claims of negligence, negligent misrepresentation, intentional infliction of emotional distress, and breach of the duty of good faith and fair dealing.  
Provident Am. Ins. Co., 
988 S.W.2d at 193 n.13 (regarding breach of duty of good faith and fair dealing)
; 
Gen. Motors Corp. v. Saenz
, 873 S.W.2d 353, 357 (Tex. 1993) (regarding negligence); 
Larsen v. Carlene Langford & Assocs., Inc., 
41 S.W.3d 245, 250 (Tex. App.—Waco 2001, pet. denied) (regarding negligent misrepresentation);
 
see LaCoure v. LaCoure, 
820 S.W.2d 228, 234 (Tex. App.—El Paso 1991, writ denied) (regarding intentional infliction of emotional distress), 
disapproved of on other grounds in Durbin v. Dal-Briar Corp.
, 871 S.W.2d 263 (Tex. App.—El Paso
 
1994, writ denied).  
Causes of action based on violations of the DTPA and former article 21.21 of the Texas Insurance Code require a showing of producing cause in order for those claims to be actionable.  
Tex. Bus. & Com. Code Ann.
 § 17.50(a) (Vernon Supp. 2006) (setting out elements of DTPA claim); 
Provident Am. Ins. Co., 
988 S.W.2d at 193 (discussing article 21.21 claims).

Proximate and producing cause differ in that foreseeability is an element of proximate cause but not of producing cause.  
Gen. Motors Corp.
, 873 S.W.2d at 357.  Proximate cause consists of both cause in fact and foreseeability.  
Union Pump Co. v. Allbritton, 
898 S.W.2d 773, 775 (Tex. 1995); 
Travis v. City of Mesquite
, 830 S.W.2d 94, 98 (Tex. 1992).  Cause in fact means that the defendant’s act or omission was a substantial factor in bringing about the injury which would not otherwise have occurred.  
Union Pump Co., 
898 S.W.2d at 775.  
A producing cause is an “efficient, exciting, or contributing cause, which in the natural sequence, produced injuries or damages complained of, if any.”  
Haynes & Boone v. Bowser Bouldin, Ltd.
, 896 S.W.2d 179 (Tex. 1995); 
Rourke v. Garza
, 530 S.W.2d 794, 801 (Tex. 1975).  Common to both proximate and producing cause is causation in fact, including the requirement that the defendant’s conduct be a substantial factor in bringing about the plaintiff’s injuries.  
Prudential Ins. Co. v. Jefferson Assocs
., 
Ltd.
, 896 S.W.2d 156, 161 (Tex. 1995); 
Lear Siegler,
 
Inc. 
v. Perez
, 819 S.W.2d 470, 472 n.1 (Tex. 1991) (quoting 
Restatement (Second) of Torts
 § 431 cmt. a (1965)).

“[C]ause in fact is not established where the defendant's negligence does no more than furnish a condition which makes the injuries possible.”
  IHS Cedars Treatment Ctr.
, 143 S.W.3d at 799.  In other words, the conduct of the defendant may be too attenuated from the resulting injuries to the plaintiff to be a substantial factor in bringing about the harm.
  
Id.
(footnote: 6)  
The word “substantial” is used to denote the fact that the defendant’s conduct has such an effect in producing the harm as to lead reasonable jurors to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called “philosophic sense,” which includes every one of the great number of events without which any happening would not have occurred.
  Lear Siegler
, 819 S.W.2d at 472 (quoting 
Restatement (Second) of Torts
 § 431 cmt. a (1965)).
 “The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries . . . [and] justify the conclusion that such injury was the natural and probable result thereof.”  
Doe
, 907 S.W.2d at 477;
 see also, e.g., Boyd v. Fuel Distribs., Inc.
, 795 S.W.2d 266, 272 (Tex. App.—Austin 1990, writ denied) (holding that a convenience store’s sale of beer to an eighteen year old was not the cause in fact of a drunk driver’s fatal car accident because the sale was to the passenger and not to the driver); 
Tex. Am. Bank v. Boggess
, 673 S.W.2d 398, 402 (Tex. App.—Fort Worth 1984, writ dism’d by agr.) (ruling that a bank’s employment of a repossessor was not the cause in fact of the car owner’s injuries because the owner was injured by a person that the repossessor had hired without the bank’s knowledge).

Appellants’ Sixth Amended Petition alleges three causal links between BCBSTX’s acts and omissions and Patricia’s death.  First, Appellants contend that the low DRG reimbursement rates caused Plaza to render substandard medical care to Patricia by “put[ting] into place many risky and deficient practices, policies, and procedures,” which in turn caused Patricia’s death by starvation.  Second, Appellants contend that BCBSTX’s failure to disclose the DRG reimbursement rate to Patricia caused her to go to and stay in Plaza when she would have gone to another hospital if BCBSTX had disclosed the DRG agreement.  Third, Appellants contend that BCBSTX’s failure to provide case management, utilization review, and quality assurance functions on Patricia’s behalf caused her death because BCBSTX failed to order her doctors to insert a feeding tube.
(footnote: 7)  We will consider each alleged causal link in turn.

The first alleged causal link–that the DRG reimbursement rate caused Plaza to render substandard care which in turn caused Patricia’s death—is too remote as a matter of law to serve as a proximate or producing cause of Patricia’s death.   BCBSTX did not unilaterally impose the DRG rates on Plaza; rather, as Appellants alleged in their petition, Plaza contractually agreed to accept the DRG rates.  Having agreed to treat BCBSTX insureds like Patricia, Plaza had an independent duty to provide adequate medical care regardless of the reimbursement rate.  Thus, even if Plaza rendered substandard care in an effort to make a profit under the DRG rates, as Appellants allege, there is no causal link between any act or omission on the part of BCBSTX and the care rendered by Plaza.  No reasonable juror could believe that BCBSTX caused Plaza to render substandard care.  Moreover, Robert Cunningham averred in his summary judgment affidavit that on the second day of Patricia’s hospitalization, 

I held what I called a “staff meeting,” during which I told the nurses and all present, which included at least one doctor, that we weren’t part of any special rate deals.  I told them that we were going to pay full price for the hospital bill, whatever it turned out to be, and we expected full service. 

Robert’s promise to pay the full medical bill would further attenuate any causal connection, if one existed, between the DRG rate and the level of care provided by Plaza to the point of legal insignificance.

The second alleged causal link—that BCBSTX’s failure to disclose the DRG rate caused Patricia’s death because it induced her to stay at Plaza—fails for the same reason.  There is no causal connection between BCBSTX and Plaza’s alleged decision to render substandard care to profit under the DRG rate agreement; thus, there can be no causal link between BCBSTX’s failure to  disclose the DRG rate and the level of care rendered by Plaza.  

The third alleged causal link—that BCBSTX caused Patricia’s death by failing to provide case management and utilization review and failing to order her doctors to insert a feeding tube—also falls short of the legal causation threshold.  Appellants cite the words that “[BCBSTX’s] Case Manager will work with You and Your physician to determine the level of care you need” as “proof that [BCBSTX] failed to perform as promised, which in this case would mean contacting Patricia’s doctors to facilitate an order for the feeding tube that BCBSTX knew was needed.”  We note, however, that the words on which Appellants rely appear not in BCBSTX’s policy but in a document named “Outline of Major Coverage,” which, in its first numbered paragraph, provides,

“This is not the insurance policy and only the actual Policy provisions will control.”  
The actual policy provides as follows:

CASE MANAGEMENT:  
The Case Manager will assess the continuing care needs in catastrophic and chronic high cost medical care cases and discuss with the attending Physician more efficient alternative means of medical care.  Unless otherwise shown on the Policy Schedule, the Case Manager is the Administrator.  Coverage may be provided for more efficient alternatives, even though such alternatives are not specifically stated in this Policy.  Coverage for alternative care is subject to the same overall Lifetime Maximum, Deductible, Copayment and/or Coinsurance requirements that apply to the medical care being replaced.  The alternative care must be:  mutually agreed to by the Insured Person, the treating Physicians, and Us; and a cost effective alternative to benefits otherwise provided by the Policy. 

Thus, BCBSTX’s “case management” duty was limited to assessing continuing needs in catastrophic and chronic high cost cases and discussing more cost-effective, alternative methods of care with Patricia’s treating physicians
; it did not have a duty to order her physicians to insert a feeding tube.  And even if BCBSTX breached its duty to perform case management as set out in the policy by failing to discuss with Patricia’s physicians more efficient and alternative means of medical care, nothing in Appellants’ pleading suggests that a breach of that duty caused Patricia’s death.

We therefore hold that Appellants failed to allege an act or omission on the part of BCBSTX that was a substantial factor in causing Patricia’s death.  Thus, BCBSTX’s conduct was not a 
proximate or producing cause of Patricia’s death, and the trial court did not err by granting summary judgment in favor of BCBSTX on Appellants’ negligence, negligent misrepresentation, intentional infliction of emotional distress, breach of the duty of good faith and fair dealing, DTPA, and article 21.21 claims.

2. Appellants’ Remaining Claims

With respect to Appellants’ breach of contract, fraud, and fraudulent inducement claims, alternative causation standards apply.  Although similar, proximate causation is not the causal standard applicable in a breach of contract action.  
Abraxas Petroleum Corp. v. Hornburg, 
20 S.W.3d 741, 758 n.12 (Tex. App.—El Paso 2000, no pet.)  Rather, actual damages are recoverable only if a plaintiff shows that the injury complained of was the natural, probable, and foreseeable consequence of the defendant’s breach.  
Mead v. Johnson Group, Inc., 
615 S.W.2d 685, 687 (Tex. 1981).  With regard to fraud and fraudulent inducement claims, the appropriate causation standard depends upon the type of actual damages sought by the plaintiff.  
See Scott v. Sebree, 
986 S.W.2d 364, 371 (Tex. App.—Austin 1999, pet. denied) (distinguishing between general and special damages and the causation standard applicable to each)
.  When general 
or direct damages are sought, a plaintiff must show that the damages were the necessary and usual result of the defendant’s wrongful act, i.e., they flow naturally and necessarily from the wrong.  
Arthur Anderson & Co. v. Perry Equip. Corp., 
945 S.W.2d 812, 816 (Tex. 1997); 
see also Scott, 
986 S.W.2d at 371 (“[a] defrauded party is entitled to those damages resulting directly and naturally from fraud as general damages”).  When special or consequential damages are sought, the plaintiff must demonstrate that those damages proximately resulted from the fraud alleged.  
Libhart v. Copeland, 
949 S.W.2d 783, 800 (Tex. App.—Waco 1997, no writ).

Applying these standards, we conclude that Appellants’ remaining claims also fail as a matter of law due to lack of causation for the reasons stated above.  Patricia’s death was not the natural, probable, and foreseeable consequence of any of BCBSTX’s conduct, nor was it the type of injury that resulted directly from the wrongful acts alleged.  Therefore, the trial court did not err by granting summary judgment on Appellants’ claims for breach of contract, fraud, and fraudulent inducement.  We overrule Appellants’ first issue.  Because our holding on causation is dispositive, we need not address Appellants’ remaining issues.

VI.  Conclusion

Having determined that all of Appellants’ claims fail as a matter of law due to lack of causation, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  February 21, 2008

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
Appellants also urge this court to accept as “agreed” legal conclusions alleged in their petition.  We decline to do so.

3:
Medicare DRG rates are the flat rates Medicare pays for medical care and services provided to Medicare patients by health care providers. 

4:
Appellants also sued Plaza Medical Center, four of Patricia’s treating physicians, and the registered nurse responsible for her care during her hospitalization for medical negligence.  However, those claims are not at issue in this appeal. 

5:
This issue is sufficient to challenge the summary judgment on all grounds upon which it could have been granted.  
See Malooly Bros., Inc. v. Napier
, 461 S.W.2d 119, 121 (Tex. 1970); 
see also Star-Telegram, Inc. v. Doe
, 915 S.W.2d 471, 473 (Tex. 1995) (reaffirming 
Malooly
).

6:
Despite this recent authority from the supreme court, Appellants argue in their motion for rehearing—based on their interpretation of a draft revision of the Restatement (Third) of Torts—that the “substantial factor rule” should be or has been abandoned.  We decline their invitation to overrule supreme court precedent.

7:
Appellants’ pleading is vague on this point, but their brief spells out the alleged causal connection in greater detail.